FILED
United States Court of Appeals
Tenth Circuit

February 24, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ERNESTO LAZOS,

Defendant-Appellant.

No. 07-2230
(D.C. No. 2:06-cr-02621-WJ-1)
(D. New Mexico)

ORDER AND JUDGMENT[*]

Before **HENRY**, Chief Judge, **TYMKOVICH**, Circuit Judge, and
**LEONARD**,[**] District Judge.

Ernesto Lazos pleaded guilty to possession with intent to distribute more

than 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1),

(b)(1)(B). He conditioned his plea on the right to appeal the district court's

denial of his motion to suppress evidence that officers discovered during a pat-

down search, subsequent to the stop of a vehicle in which he was a passenger. He

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**]The Honorable Timothy D. Leonard, United States District Judge for the
Western District of Oklahoma, sitting by designation.

argues that the officer conducting the search lacked reasonable suspicion and therefore violated his Fourth Amendment rights. The district court found that the officers had reasonable suspicion to pat-down Mr. Lazos because (1) a drug task force officer had reported that he was rumored to be a drug dealer, (2) another officer had received a report that he brandished a gun at two individuals 17 days earlier, (3) the context of the stop was suspicious, and (4) he behaved suspiciously when asked to exit the vehicle. The district court also initially referenced evidence discovered after the beginning of the pat-down search to justify the search. Despite this errant reference, we agree with the district court's ruling that the officers acted legally. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the decision of the district court.

## I. BACKGROUND

On a cold November night at approximately 3:30 a.m., Lordsburg Police Officer Clark Smith stopped a car that was speeding eastbound on I-10 in Lordsburg, New Mexico. Lordsburg is a small community, and Officer Smith recalled the driver of the vehicle as Deja-Vu Bowers, a Lordsburg resident. Officer Smith also remembered that Ms. Bowers and fellow Lordsburg police officer, Art De La Garza, had a child together. Officer Smith noticed that Ms. Bowers had "glossy eyes" and "more of a pinpoint glance." Rec. vol. III, at 19 (Tr. of Hr'g, dated May 14, 2007). Officer Smith told Ms. Bowers he would cite her for speeding and for not having her driver's license. Officer Smith noticed a

male passenger in the front seat of the car as well as three children in the backseat, one of whom was Officer De La Garza's son. The male passenger in the car was Mr. Lazos, though Officer Smith testified he did not initially identify him.

After Officer Smith's brief interaction with Ms. Bowers, Officer De La Garza as well as Corporal David Arredondo and Deputy Lars Taylor of the Hidalgo County Sheriff's Department arrived at the scene of the stop. Officer De La Garza testified that Officer Smith told him that his son was in the stopped car with Mr. Lazos and Ms. Bowers. *Id.* at 43. (This contradicted Officer Smith's testimony that he did not recognize Mr. Lazos during the initial interaction.) Officer De La Garza recognized that he had a conflict of interest based on his relationship to the passengers and promised to "stay out of the traffic stop as much as possible." *Id.* Officer De La Garza asked Corporal Arredondo and Deputy Taylor to assist with the stop because of his conflict.

The officers were aware that Ms. Bowers and Mr. Lazos could be involved in drug trafficking. Task Force Officer Israel Barrera had previously conveyed a rumor to Officer De La Garza that Mr. Lazos and the driver had been transporting methamphetamine from Tucson to Lordsburg. Officer De La Garza testified that he had heard Mr. Lazos was residing in Tucson and that he was transporting methamphetamine in the "early morning hours" in amounts between one and six ounces. *Id.* at 44. The other officers testified that they were also aware of the

rumor. In the previous six to eight months, Corporal Arredondo had received information on "at least two or three occasions" from Officer Barrera and Officer De La Garza that Ms. Bowers and Mr. Lazos were transporting methamphetamine between Tucson and Lordsburg. *Id.* at 69. The police did not have any specific information that Mr. Lazos and the driver were transporting drugs the night of the traffic stop.

Based on the rumor that Mr. Lazos and Ms. Bower were involved in drug trafficking, Corporal Arredondo went to the passenger's window to ask Mr. Lazos "drug interdiction questions" to try to "build more suspicion" that he was transporting drugs. *Id.* at 74. As Corporal Arredondo approached, Mr. Lazos rolled down his window. Corporal Arredondo asked Mr. Lazos to get out of the car. Mr. Lazos explained that he was sick. Because it was a cold night, Corporal Arredondo asked whether Mr. Lazos had a jacket. Mr. Lazos got his jacket and exited the car. As he exited the car, he squeezed between Corporal Arredondo and the open car door without facing Corporal Arredondo. He then put on his jacket and walked to the front of the vehicle. Corporal Arredondo testified that this manner of exiting the car was unusual and suggested Mr. Lazos was hiding something.

When Officer De La Garza saw Mr. Lazos exit the vehicle, Officer De La Garza instructed Deputy Taylor to tell Corporal Arredondo to use caution with Mr. Lazos. Officer De La Garza based this warning on a recent, reported

allegation that Mr. Lazos had a gun. Seventeen days before the traffic stop, Officer De La Garza's brother, who is also a Lordsburg police officer, told Officer De La Garza that he had received a report that Mr. Lazos and another man brandished firearms at a juvenile and another man that day. The juvenile's parents had reported the incident. Though Officer De La Garza suspected Mr. Lazos to be armed and dangerous based on this report, he did not tell his fellow officers about the allegation, only relaying his suspicion to Corporal Arredondo through Deputy Taylor.

Deputy Taylor said "10-48, 10-80" to Corporal Arredondo: essentially police code for "use caution, the person might be armed and dangerous." *Id.* at 25, 80. The codes prompted Corporal Arredondo to pat Mr. Lazos down for weapons. Corporal Arredondo ordered Mr. Lazos to assume the pat-down position—to turn around, interlock his fingers above his head, and spread his feet. Mr. Lazos complied, but did not spread his feet as widely as necessary. After Mr. Lazos's feet were spread far enough apart, Corporal Arredondo began to put his hands on Mr. Lazos, starting at the neck and working his way down. When he reached Mr. Lazos's crotch, he felt a "large lump," which later turned out to be a bag of methamphetamine tied to the drawstring of Mr. Lazos's pants. *Id.* at 83. Upon discovery of the large lump, Mr. Lazos attempted unsuccessfully to flee. After a brief struggle, the officers arrested Mr. Lazos.

A grand jury returned a two-count indictment against Mr. Lazos, charging him with conspiracy to possess with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. § 846, and possession with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B).  Mr. Lazos moved to suppress the seized evidence on the ground that the pat-down search violated the Fourth Amendment because the officers lacked reasonable suspicion that he was armed and dangerous on the night of the traffic stop.

After conducting an evidentiary hearing, the district court denied the motion.  The court ruled that there was reasonable suspicion for the pat-down because (1) the officers testified that they had received information from a task force officer that Mr. Lazos was involved in drug trafficking; (2) Deputy Taylor conveyed to Corporal Arredondo a code meaning the defendant was armed and dangerous, because of information that "Officer De La Garza's brother, who is also employed as a Lordsburg police officer, learned, based on an incident allegedly involving the defendant brandishing a weapon towards another person approximately 17 days before November 22, 2006," *id.* at 125; (3) the context of the stop was suspicious, especially because the stop occurred around 3:30 a.m. on a cold night with three school-aged children in the back seat; and (4) Mr. Lazos behaved suspiciously during the stop.  As to the fourth factor, the court explained that Mr. Lazos was initially hesitant to exit the vehicle, and he was wearing baggy

pants, which could have concealed a weapon. According to the court, as he exited the car, "Mr. Lazos kept his back towards [Corporal] Arredondo in an effort to conceal what [Corporal] Arredondo thought was something, and I believe and will find that [Corporal] Arredondo reasonably thought the defendant might be concealing a weapon based on the way Mr. Lazos exited the vehicle." *Id.* The court also justified the search based in part on information Corporal Arredondo discovered during the search, that Mr. Lazos was reluctant to spread his legs and that "the pat-down search before [Mr. Lazos] took off revealed some sort of object in [his] pants that could have been a weapon." *Id.*

After the court denied his motion to suppress, Mr. Lazos entered a conditional guilty plea to the second count, possession with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), reserving his right to appeal the ruling. The court sentenced him to ten years in prison.

## II. DISCUSSION

Mr. Lazos challenges the district court's denial of his motion to suppress. Though Mr. Lazos does not challenge the initial stop of the vehicle, he contends the police lacked reasonable suspicion to remove him from his passenger seat and conduct a pat-down search of his person. Mr. Lazos maintains that the information from the task force officer was an inchoate rumor or hunch and therefore should not contribute to reasonable suspicion. Information related to

the gun brandishing incident, in Mr. Lazos's view, was insufficiently substantiated and too stale to contribute to reasonable suspicion. Mr. Lazos argues that taken together the facts did not allow officers to draw a reasonable inference that Mr. Lazos was armed and dangerous. Mr. Lazos also argues that the district court erred in relying on information obtained after the stop.

Disagreeing with Mr. Lazos, we hold that the facts in totality allowed the officers reasonably to suspect that Mr. Lazos was armed and dangerous. Any district court error in relying on information obtained after the pat-down started was harmless. Officers were nonetheless justified based on the information about Mr. Lazos drug-trafficking, the gun brandishing incident, and the additional suspicious activity prior to the pat-down. We affirm the district court's ruling on his motion to suppress.

A. Standard of Review

The usual standard applies: motions to suppress are reviewed construing facts favorable to the prevailing party, credibility and weight of evidence determinations belong to the district court, and the reasonableness of a search is reviewed de novo. *United States v. Rodriguez-Rodriguez*, 550 F.3d 1223, 1226 (10th Cir. 2008).

B. Under the Fourth Amendment, a pat-down search generally requires reasonable suspicion that the suspect is armed and dangerous.

In accordance with the Fourth Amendment, people have the right "to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. Even so, when police officers stop a vehicle to investigate its occupants, "[p]olice officers are authorized to take reasonable steps necessary to secure their safety and maintain the status quo." *United States v. Garcia*, 459 F.3d 1059, 1063 (10th Cir. 2006) (quoting *United States v. Gama-Bastidas*, 142 F.3d 1233, 1240 (10th Cir. 1998)). Not surprisingly, the Supreme Court has recognized that passengers may present a risk to officer safety equal to that of the driver. *See Maryland v. Wilson*, 519 U.S. 408, 413-14 (1997). Thus, "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." *Id.* at 415.

"'In some circumstances,' an officer may go further and conduct a pat-down search for weapons." *United States v. Sanchez*, 519 F.3d 1208, 1216 (10th Cir.) (quoting *Garcia*, 459 F.3d at 1063), *cert. denied*, 129 S.Ct. 167 (2008). "The purpose of the limited pat-down search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Id.* (quotations omitted); *see also United States v. Rice*, 483 F.3d 1079, 1083 (10th Cir. 2007) ("Officer safety is the primary objective justifying an officer's right to perform a pat-down search.").

Standards that the Supreme Court established in *Terry v. Ohio*, 392 U.S. 1 (1968), govern the application of the Fourth Amendment to pat-down searches.

In *Terry*, the court recognized that there is no "ready test" to determine the reasonableness of a search or seizure other than balancing the need to search or seize with the invasion that the search or seizure entails. *Id.* at 21 (citation omitted). We have held that an officer may conduct a pat-down search "if he or she harbors an articulable and reasonable suspicion that the person is armed and dangerous." *Sanchez*, 519 F.3d at 1216 (citation omitted); *see also Arizona v. Johnson*, _ _ _ S.Ct. _ _ _, 2009 WL 160434, at *6 (Jan. 26, 2009) ("[O]fficers who conduct routine traffic stop[s] may perform a patdown of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous." (quotation marks and citation omitted)). "The reasonable suspicion required to justify a pat-down search represents a minimum level of objective justification . . . . Reasonable suspicion is based on the totality of circumstances, taking into account an officer's reasonable inferences based on training, experience, and common sense." *Rice*, 483 F.3d at 1083 (quotation marks and citations omitted). "[A] court may not engage in a sort of divide and conquer analysis by evaluating and rejecting each factor in isolation." *United States v. Cheromiah*, 455 F.3d 1216, 1221 (10th Cir. 2006) (quotation marks omitted). A court must examine whether under a totality of the circumstances, a "reasonably prudent" officer "would be warranted in the belief that his safety . . . was in danger." *Terry*, 392 U.S. at 27; *see also Rice*, 483 F.3d at 1083. An officer's subjective intent or good

faith do not affect the reasonableness of his actions. *Whren v. United States*, 517 U.S. 806, 813 (1996).

C. Corporal Arredondo had reasonable suspicion to pat-down Mr. Lazos.

In our view, information from the task force officer about drug-trafficking, reports of gun-brandishing, and Mr. Lazos's suspicious behavior during the traffic stop all contributed to reasonable suspicion under a totality of the circumstances. To the extent the district court relied on evidence collected after the search began, any error is harmless.

1. Rumors of drug-trafficking contributed to reasonable suspicion.

Mr. Lazos argues that the rumors that he was a drug dealer were unsubstantiated, unreliable, and unspecific and therefore did not establish reasonable suspicion. He argues under *Terry* reasonable suspicion must be based on objectively reasonable inferences from "known facts." *Dunaway v. New York*, 442 U.S. 200, 209 n.11 (1979) (citing *Terry*, 392 U.S. at 21, 27). In this sense, suspicion may not be based on "inchoate suspicions and unparticularized hunches." *Lyons*, 510 F.3d at 1237 (citations omitted). In response, the government points to evidence in the record that the information came from a local drug task force officer who told the officers that Ms. Bowers and Mr. Lazos were transporting methamphetamine from Tucson to Lordsburg for sale. The officers also knew that the deliveries occurred in the "early morning hours," and that their preferred route was I-10. Rec. vol. III, at 44. The officers corroborated

- 11 -

these rumors when they encountered Bowers and Lazos traveling eastbound on I-10 at 3:30 a.m. We hold that the information, though perhaps of anonymous origin, was specific enough under the circumstances to be reliable. This information contributed to the reasonable suspicion.

2. The report of the gun-brandishing incident contributed to reasonable suspicion.

Mr. Lazos argues that the district court improperly considered the gun-brandishing incident because the information was stale and unsubstantiated. Seventeen days prior to the stop, Officer De La Garza's brother was called to a house to investigate a report that Mr. Lazos and another man both brandished guns at two people at the residence. The juvenile victim's parents reported the incident. Officer De La Garza's brother had been to the house where the incident allegedly took place to take the report from the victim's parents. The circumstances of the report suggest that officers could reasonably rely on it. When officers know the identities of the source of the allegation, they can "hold [them] responsible if [their] allegations turned out to be fabricated." *United States v. Jenkins*, 313 F.3d 549, 554 (10th Cir. 2002). Given that the officers knew the identities of the source and had investigated the incident by at least going to the house, the district court properly found that the information was specific and reliable enough to contribute to reasonable suspicion.

Similarly, the information was not too stale to contribute to reasonable suspicion. Information can be too stale if it "no longer suggests that the items sought will be found in the place to be searched." *United States v. Snow*, 919 F.2d 1458, 1459 (10th Cir. 1990). Staleness does not depend on an elapsed number of days. Instead, the court must consider whether "the nature of the criminal activity, the length of the activity, and the nature of the property to be seized" or items sought suggest staleness. *Id.* at 1460. It is reasonable to infer that one who brandishes a firearm will intermittently possess that firearm for some period of time afterwards. *Cf. United States v. Miles*, 772 F.2d 613, 616 (10th Cir. 1985) (holding a two-and-a-half week old report of gun theft was not too stale to contribute to probable cause that the particular guns involved in the theft remained in a suspect's possession). Here, Mr. Lazos allegedly brandished a firearm 17 days earlier. Seventeen days is not too distant a point in time that an officer would be unreasonable in concluding that Mr. Lazos might possess that firearm and engage in similar behavior endangering the officer. We hold that the officers reasonably relied on this information, and the district court was correct to take it into account.

> 3. The totality of the circumstances, including Mr. Lazos's suspicious behavior and the context of the stop, support a finding of reasonable suspicion.

Other factors contributed to reasonable suspicion. Officer Smith stopped the vehicle for speeding on a cold November weeknight at 3:30 a.m. Three

school-aged children were in the backseat.  When Mr. Lazos exited the vehicle, he did so in a manner that avoided facing Corporal Arredondo directly.  The district court found that the manner in which Mr. Lazos exited the car reasonably aroused suspicion in Corporal Arredondo that Mr. Lazos was armed.  Taken together with the information about drug trafficking and the report of gun brandishing, these factors support the district court's finding of reasonable suspicion.  *See Johnson*, 2009 WL 160434, at *6 (holding officers may pat-down passengers that they reasonably suspect to be armed and dangerous).

A notable aspect of this stop is the association between the occupants of the vehicle and Officer De La Garza.  This association could cast doubt on the officers' motives and possibly the source of the information regarding Mr. Lazos's drug trafficking history.  Nonetheless, the subjective intent of an officer does not render lawful conduct unlawful.  *Whren*, 517 U.S. at 813.[*]  Furthermore, the evidence need not be sufficient to convict Mr. Lazos; it need only be sufficient to cast reasonable suspicion on him.  *See United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004).   Given the circumstances, the officers had reasonable suspicion to conduct a pat-down search of Mr. Lazos out of concern for their safety.

---

[*]We also note that we are concerned with Corporal Arredondo's testimony that he was going to talk to Mr. Lazos in order to "build more suspicion."  Rec. vol. III, at 74.  While this is troubling, it only goes to Corporal Arredondo's subjective intent, not to the question of reasonable suspicion.

D.  Reasonable suspicion exists here even if the district court erred when it considered events that occurred after the search began.

The district court may have erred by listing the lump found and Mr. Lazos's initial failure to spread his legs as supporting reasonable suspicion for the pat-down.  Rec. vol. III, at 125; *see United States v. Powell*, 483 F.3d 836, 838 (D.C. Cir.) ("[A] search not justified when it is begun cannot be used to elicit evidence with which to justify the search after the fact." (citing *United States v. Spinner*, 475 F.3d 356, 359 n.* (D.C. Cir. 2007))), *cert. denied*, 128 S.Ct. 646 (2007).  The prosecutor attempted to correct this error:

> Mr. Saltman [prosecutor]: One thing, Your Honor.  When the Court went through its list of things that supported reasonable suspicion, it identified the defendant's failure to spread his feet and also the lump that Sergeant Arredondo felt.  I'm afraid the Tenth Circuit might construe those as part of that pat down, so I would just ask the Court to find that the factors it identified before those two, because I think those two were the last two, that all the factors that the Court identified before those two support reasonable suspicion for the pat down.

Rec. vol. III, at 127.  It is not clear from the record that the court completely corrected its initial error.  Responding to the prosecutor, the court said:

> The Court: Well, you know, I think I've –– I mean, if the circuit disagrees with what I said, then they won't hesitate to let me know.  Certainly, the pat-down search had not taken place when Sergeant Arredondo was attempting to have the defendant spread his legs, so if I didn't make that clear, I'll make that clear now.
>
> And then again, you might be right, but certainly, the –– you know, at the time the pat down occurred, my point was the, you know, the sergeant was justified in thinking there was a weapon.  But technically, that's right.  The pat down had already occurred. But I've stated my

> reasons that justified the Terry pat-down search, and like I said, if the circuit disagrees with me, they won't hesitate to let me know.

*Id.* at 127-28. Thus, the district court did not clearly indicate that it only relied on evidence prior to the search to justify the search.

We hold that to the extent the district court relied on subsequently observed behavior or learned facts, the error is harmless. This error is equivalent to an error in an evidentiary ruling, because the court may have considered evidence that it should not have. *Cf. United States v. Cestnik*, 36 F.3d 904, 910 (10th Cir. 1994). This type of error is harmless "unless the error had a substantial influence on the outcome of the proceeding or leaves one in grave doubt as to whether it had such effect." *United States v. Thompson*, 287 F.3d 1244, 1253 (10th Cir. 2002); *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). As noted above, there is ample evidence supporting reasonable suspicion without reference to Mr. Lazos's hesitance to spread his legs or the lump found in his pants. Therefore, any error would not affect the outcome of the case because reasonable suspicion nonetheless existed.

## III. CONCLUSION

For the aforementioned reasons, we AFFIRM the district court's denial of Mr. Lazos's motion to suppress.

Entered for the Court

Robert H. Henry
Chief Circuit Judge