FILED
United States Court of Appeals
Tenth Circuit

December 18, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TROY A. BONG,

    Defendant - Appellant.

No. 13-3301
(D.C. No. 6:13-CR-10004-MLB-1)
(D. Kansas)

**ORDER AND JUDGMENT**[*]

Before **McHUGH**, **McKAY** and **BALDOCK**, Circuit Judges.

Defendant-appellant Troy Bong appeals from his conviction on one count of being

a felon in possession of a handgun in violation of 18 U.S.C. §§ 922(g), 924(e). Mr. Bong

challenges the denial of his pretrial motion to suppress evidence allegedly obtained in

violation of his Fourth Amendment rights and the admission of certain testimony at his

subsequent trial. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

On December 22, 2012, Officers Thatcher and Springob of the Wichita Police Department were parked outside a house that was the subject of a drug investigation.[1] The officers observed a car leave the target house and followed the vehicle. The driver of the vehicle failed to activate the car's turn signal 100 feet before an intersection. Based on this traffic violation, the officers initiated a traffic stop. Officer Springob[2] approached the driver's side of the car, while Officer Thatcher approached the passenger side. A woman, later identified as Mr. Bong's wife, was driving the car. Mr. Bong was in the front passenger seat.

Officer Thatcher used his flashlight to look into the passenger side of the vehicle as he approached. Officer Thatcher testified Mr. Bong refused to make eye contact, instead staring straight ahead. Officer Thatcher thought Mr. Bong looked familiar, prompting him to ask for Mr. Bong's identification. Mr. Bong opened the passenger door to hand Officer Thatcher his identification. As Mr. Bong opened the door, Officer

---

[1] This recitation of the facts is drawn from the evidence adduced at the pretrial hearing on Mr. Bong's motion to suppress. Though Mr. Bong's briefing on appeal relies in part on testimony elicited at trial, we will only consider the evidence known to the district court at the suppression hearing. *See United States v. Bass*, 661 F.3d 1299, 1303 (10th Cir. 2011). "Because the district court should have the first opportunity to correct its mistake, we ordinarily will not consider trial evidence which undermines a district court decision rendered at a pretrial suppression hearing," absent a renewed suppression motion at trial. *Id.* (internal quotation marks omitted). Mr. Bong did not renew his motion to suppress at trial. Thus, we will not look to the evidence adduced at trial to determine if the prior ruling should stand.

[2] Officer Springob did not testify at the suppression hearing.

Thatcher noticed a cigarette pack between the passenger seat and the door. Officer Thatcher found this suspicious because in his experience people attempting to hide illegal substances often drop them between the seat and door.

After examining Mr. Bong's identification, Officer Thatcher recalled he had previously arrested Mr. Bong on drug, firearms, and parole violation charges. Officer Thatcher asked Mr. Bong if he was still on parole, but Mr. Bong refused to respond. According to Officer Thatcher, Mr. Bong began to exhibit signs of nervousness—heavy breathing, sweating, and refusal to acknowledge the officer. Because Officer Thatcher's prior arrest of Mr. Bong had involved a firearm, the officer became concerned for his and Officer Springob's safety. Officer Thatcher then asked Mr. Bong to exit the vehicle. Mr. Bong initially refused to respond, but he eventually exited the vehicle after Officer Thatcher repeated his order several times.

When Mr. Bong stepped out of the vehicle, Officer Thatcher noticed he was standing so that the right side of his body was turned away. Officer Thatcher also observed a knife clipped into one of the front pockets of Mr. Bong's jacket. Officer Thatcher removed the knife from Mr. Bong's pocket and told him to put his hands on top of the car. He then informed Mr. Bong that he was going to perform a patdown for weapons. According to Officer Thatcher, Mr. Bong hesitated, but eventually put his hands on the top of the car.

Officer Thatcher reached up to place his hands on top of Mr. Bong's hands on the car roof. As he did so, Mr. Bong attempted to back away from the car and evade Officer

Thatcher. Because he feared Mr. Bong might have a weapon, Officer Thatcher attempted to maintain control of Mr. Bong's hands. The two struggled briefly, at which point Officer Thatcher tried to throw Mr. Bong to the ground while keeping control of his hands. Both men fell to the ground, still struggling. As Mr. Bong attempted to rise, Officer Thatcher kicked him approximately three times in the abdomen in an attempt to knock him back down. At that point, Officer Thatcher observed a black object resembling a firearm fall to the ground. He immediately yelled "gun, gun!" Aplt. Appx. at 93.

In response to Officer Thatcher's shout, Officer Springob entered the fray and knocked Mr. Bong to the ground. The officers were able to subdue Mr. Bong and place him in handcuffs. After the officers restrained Mr. Bong, they found a firearm on the ground beneath him.

Mr. Bong moved to suppress the evidence obtained during the traffic stop and his arrest, arguing it was obtained in violation of his Fourth Amendment rights. Though he acknowledged the officers had reasonable suspicion to initiate an investigative traffic stop on the basis of the observed traffic violation, Mr. Bong argued the scope of the detention following the traffic stop and the force used by the officers was unreasonable, ultimately transforming the contact into an arrest without probable cause. The district court expressed concern about the level of force used by the officers, but it ultimately concluded Officer Thatcher's actions were justified under the circumstances. The court therefore denied Mr. Bong's motion to suppress.

The case proceeded to trial, during which the Government presented evidence establishing essentially the same facts as in the pretrial suppression hearing. The Government advanced the theory that Mr. Bong dropped the gun during the scuffle with the officers and, by virtue of his status as a felon, was guilty of being a felon in possession of a firearm. Mr. Bong's defense was that another man, Jeremy Fisher, had dropped the gun where it was found and the traffic stop and subsequent scuffle only coincidentally occurred at the same location Mr. Fisher had dropped the gun.

Ms. Bong testified for the defense, stating that although Mr. Fisher was with the Bongs when they traveled to the house under surveillance by the officers, he was nervous about entering. They therefore agreed to drop Mr. Fisher off near the house and to pick him up at a nearby Quik Trip after leaving the house. Mr. Fisher also testified. He claimed the gun was his, but he dropped it and "took off" when he saw the police officers initiate the traffic stop of the Bongs. Aplt. Appx. at 414–15. Mr. Bong testified on his own behalf, corroborating Ms. Bong's and Mr. Fisher's accounts.

The jury convicted Mr. Bong of one count of being a felon in possession of a handgun in violation of 18 U.S.C. §§ 922(g), 924(e), and the district court sentenced him to a term of 293 months in prison. Mr. Bong appeals.

## II.    DISCUSSION

Mr. Bong challenges the denial of his pretrial motion to suppress. He also challenges two sets of statements admitted during his trial—portions of Officer Thatcher's testimony related to Mr. Bong's body language on the night in question and

statements made by the prosecutor that allegedly bolstered the credibility of the prosecution's witnesses. We address each argument in turn.

### A.  The Motion to Suppress

"In reviewing a district court's order granting or denying a motion to suppress, this court accepts the district court's factual findings unless clearly erroneous and considers the evidence in the light most favorable to the district court's determination." *United States v. Augustine*, 742 F.3d 1258, 1264–65 (10th Cir.), *cert. denied*, 134 S. Ct. 2155 (2014) (internal quotation marks omitted). "The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law reviewed de novo." *United States v. Cash*, 733 F.3d 1264, 1273 (10th Cir. 2013), *cert. denied*, 134 S. Ct. 1569 (2014).

A routine traffic stop, like the one at issue here, "is analogous to an investigative detention." *United States v. Caro*, 248 F.3d 1240, 1244 (10th Cir. 2001). That is, it constitutes a seizure within the meaning of the Fourth Amendment and must be supported by reasonable suspicion. *See id.*; *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000). We engage in a twofold inquiry to determine the reasonableness of a traffic stop. *Caro*, 248 F.3d at 1244. "First, the officer's action must be justified at its inception." *United States v. Fonseca*, 744 F.3d 674, 680 (10th Cir. 2004) (internal quotation marks omitted). Second, an officer's action must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* (internal quotation marks omitted). Further detention may be justified if the officer discovers facts that give rise to a

reasonable suspicion of criminal activity. *United States v. Soto-Cervantes*, 138 F.3d 1319, 1322 (10th Cir. 1998). "In other words, reasonable suspicion must exist at all stages of the detention, although it need not be based on the same facts throughout." *Id.*

"An officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (internal quotation marks omitted). "An officer must be able to point to specific and articulable facts to support a finding of reasonable suspicion; an inchoate and unparticularized suspicion or hunch is insufficient." *Soto-Cervantes*, 138 F.3d at 1322 (internal quotation marks omitted). Whether an objectively reasonable suspicion of illegal activity supports an investigative detention "does not depend on any one factor but on the totality of the circumstances." *Id.*

Moreover, when an officer initiates a traffic stop, he seizes all occupants of the vehicle. *See Brendlin v. California*, 551 U.S. 249, 255–57 (2007). Officers are entitled to order the driver and any passengers to exit the vehicle for the duration of the stop in order to ensure the officers' safety. *United States v. Dennison*, 410 F.3d 1203, 1211 (10th Cir. 2005); *see also Maryland v. Wilson*, 519 U.S. 408, 413 (1997) (recognizing "the fact that there is more than one occupant of the vehicle increases the possible sources of harm to the officer"). An officer "may also perform a patdown of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous." *Dennison*, 410 F.3d at 1211 (internal quotation marks omitted). "The purpose of the limited [patdown] search

-7-

is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence." *United States v. Sanchez*, 519 F.3d 1208, 1216 (10th Cir. 2008) (internal quotation marks omitted).

In this case, Mr. Bong concedes Officers Springob and Thatcher had reasonable suspicion to initiate an investigative traffic stop on the basis of the observed traffic violation. He further concedes Officer Thatcher was entitled to order him to exit the vehicle. However, Mr. Bong argues Officer Thatcher lacked reasonable suspicion to conduct a patdown for weapons. Mr. Bong further argues the encounter escalated to an illegal arrest when the officers used excessive force during the scuffle.

## 1. The Patdown

We have previously identified a number of factors relevant to whether an officer had reasonable suspicion a subject was armed, which are present in this case. For example, an officer's knowledge that a subject is presently armed is sufficient standing alone to justify a protective frisk. *See United States v. Brakeman*, 475 F.3d 1206, 1212–13 (10th Cir. 2007). And an officer need not confine his search to the weapon he already knows the subject possesses. *Id.* at 1213. Rather, he is entitled to determine whether the subject is carrying any other weapons. *Id.* In this case, Officer Thatcher testified he observed a knife clipped to Mr. Bong's jacket pocket. Once the officer had certain knowledge Mr. Bong possessed a weapon, he was entitled to conduct a protective frisk to ensure no other weapons were present.

Moreover, "[a]n officer's knowledge of past criminal conduct is probative of whether the defendant is armed and dangerous, especially if a weapon was involved." *United States v. Garcia*, 751 F.3d 1139, 1145 (10th Cir. 2014). Officer Thatcher testified he had previously arrested Mr. Bong for drug and weapons charges. This previous interaction, in which Mr. Bong illegally possessed a firearm, supports an inference that Mr. Bong was armed and dangerous on the night in question.

Also, "an individual's known connection with drug transactions is a factor supporting reasonable suspicion to frisk that individual for weapons" because drug crimes are frequently associated with weapons. *United States v. Garcia*, 459 F.3d 1059, 1064–65 (10th Cir. 2006). Officer Thatcher's prior arrest of Mr. Bong involved the possession of methamphetamine. And the officers observed Mr. Bong and his wife drive away from a house under observation on suspicion of drug trafficking. Taken together, these facts support a finding of reasonable suspicion.

Finally, a subject's evasive body positioning can be a relevant factor in establishing reasonable suspicion. *See United States v. Oglesby*, 597 F.3d 891, 894–96 (7th Cir. 2010); *United States v. Raymond*, 152 F.3d 309, 312 (4th Cir. 1998); *United States v. Lazos*, 314 F. App'x 127, 133 (10th Cir. 2009) (unpublished).[3] In *Oglesby*, officers approached a group of men standing at a bus stop in a high-crime area because

---

[3] Though not precedential, we find the reasoning of this court's unpublished opinions instructive. *See* 10th Cir. R. 32.1 ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").

the men were obstructing the sidewalk in violation of a city ordinance. 597 F.3d at 892. As the officers approached, the defendant angled his body away from the officers such that the right side of his body was obscured from their view. *Id.* at 894. The officers testified during the defendant's pretrial suppression hearing that they suspected such an angled stance was being used to conceal a weapon. *Id.* at 894–95. On appeal, the Seventh Circuit held this evasive body positioning was a valid factor in the officer's calculation of reasonable suspicion. *Id.* at 895. In this case, Officer Thatcher testified Mr. Bong exited the car while keeping the right side of his body away from the officer. This type of evasive body positioning is a factor that supports a finding of reasonable suspicion.

In summary, the totality of the circumstances supporting the patdown includes Officer Thatcher's observation that Mr. Bong was presently armed with a knife, the officer's prior arrest of Mr. Bong while he was in possession of a firearm, Mr. Bong's prior known and current suspected involvement with drug transactions, and Mr. Bong's suspicious body positioning.[4] Based on the totality of the circumstances and viewing the

---

[4] In his briefing to this court, Mr. Bong admits these circumstances, stating, "The officer [Officer Thatcher] testified that he believed Mr. Bong was acting nervous, that he knew that Mr. Bong had possessed a gun—in a locked glovebox—on a previous occasion, that Mr. Bong had a folded up pocket knife clipped to an exterior pocket of his jacket, and that Mr. Bong was positioned with his hip away from the car." Aplt. Br. at 19. Although Mr. Bong disputes the legal significance of these factual circumstances, he has conceded their existence. We also note Mr. Bong's recitation of the factual circumstances surrounding the patdown includes one allegation that is not supported by the *evidence* presented to the district court. At the suppression hearing, defense counsel asked Officer Thatcher if the gun was in the locked glove compartment of the vehicle during his previous encounter with Mr. Bong, but Officer Thatcher could not recall if that was the

Continued . . .

-10-

evidence in the light most favorable to the district court's determination, we conclude

Officer Thatcher had reasonable suspicion to justify frisking Mr. Bong for weapons.

Because we conclude the patdown was proper, we next turn our attention to the officers'

use of force.

**2. The Officers' Use of Force**

"[O]fficers may use force during a *Terry*-type detention to the extent that such

steps are reasonably necessary to protect their personal safety and to maintain the status

quo during the course of the stop." *United States v. Mosley*, 743 F.3d 1317, 1328–29

(10th Cir.), *cert. denied*, 135 S. Ct. 184 (2014) (alteration in original) (internal quotation

marks omitted). "Under certain circumstances, the steps officers may permissibly take to

protect their safety include drawing their weapons, placing a suspect in handcuffs, or

forcing a suspect to the ground." *Id.* at 1329. But a greater use of force can transform an

investigative detention into an arrest requiring probable cause. *See United States v.*

*Melendez-Garcia*, 28 F.3d 1046, 1051 (10th Cir. 1994) ("[I]f police officers' actions

exceed what is reasonably necessary under the totality of the circumstances, the stop may

only be justified by probable cause or consent."). As we recently explained:

> "Determining whether the force used to effect a particular seizure is
> reasonable under the Fourth Amendment requires a careful balancing of the
> nature and quality of the intrusion on the individual's Fourth Amendment
> interests against the countervailing governmental interests at stake." This
> test "requires careful attention to the facts and circumstances of each

case. Statements of counsel are not evidence. *See Mason v. United States*, 408 F.2d 903,
907 (10th Cir. 1969).

-11-

particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Further, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."

*Mosley*, 743 F.3d at 1329 (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989) (citations omitted)).

Here, the decision to frisk Mr. Bong for weapons was justified. But when Officer Thatcher began the patdown, Mr. Bong resisted by attempting to back away from the car on which Officer Thatcher had ordered Mr. Bong to place his hands. Fearing Mr. Bong had another weapon, Officer Thatcher sought to maintain control of Mr. Bong's hands. As the two struggled, Officer Thatcher used a "hip toss" to bring Mr. Bong to the ground. Aplt. Appx. at 92. While the two were on the ground, Officer Thatcher continued to hold onto Mr. Bong's hands. Only when it appeared Mr. Bong was about to stand did Officer Thatcher kick him several times in the abdomen, thereby dislodging a black object. According to Officer Thatcher, he believed the object to be a gun and alerted Officer Springob to the danger. At that point, Officer Springob entered the fray, and the officers were able to restrain Mr. Bong.

Under these circumstances, we agree with the district court that the degree of force used by the officers was reasonable and justified.[5] Accordingly, we affirm the denial of Mr. Bong's motion to suppress.

### B. Challenged Statements at Trial

We next turn our attention to Mr. Bong's challenge to two sets of statements introduced by the Government at trial. First, Mr. Bong takes issue with portions of Officer Thatcher's testimony in which the officer referenced Mr. Bong's body language on the night in question. Specifically, Mr. Bong argues this testimony constituted expert testimony that should not have been allowed because Officer Thatcher had not been properly qualified as an expert. Second, Mr. Bong objects to statements made by the prosecutor that allegedly bolstered the credibility of the prosecution's witnesses. But, as Mr. Bong concedes, no objection was raised at trial to either set of statements. As such, we review the admission of these statements for plain error.

"We find plain error only when there is (1) error, (2) that is plain, (3) which affects substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Smalls*, 752 F.3d 1227, 1236 (10th

---

[5] In his briefing on appeal, Mr. Bong alleges Officer Springob intentionally kneed him in the groin. Relying on *Johnson v. District of Columbia*, 528 F.3d 969 (D.C. Cir. 2008), Mr. Bong argues this constituted a violation of the Fourth Amendment. Although Mr. Bong testified during trial that Officer Springob kneed him in the groin, this evidence was not introduced during the pretrial suppression hearing. Because Mr. Bong did not renew his motion to suppress at trial, our review is limited to the facts known to the district court when it ruled on the motion to suppress. *See supra* note 1.

Cir. 2014). "The plain error standard presents a heavy burden for an appellant" and is to be used sparingly. *United States v. Romero*, 491 F.3d 1173, 1178–79 (10th Cir. 2007). Moreover, the "defendant has the burden of establishing all four elements of plain error." *United States v. Ventura-Perez*, 666 F.3d 670, 674 (10th Cir. 2012).

In this case, Mr. Bong has failed to argue, let alone establish, the third and fourth prongs of plain error. In order to demonstrate an error affected substantial rights, a defendant must show the error was prejudicial. That is, the defendant must demonstrate that, but for the error, there was a reasonable probability that the outcome of the trial would have been different. *United States v. Bader*, 678 F.3d 858, 868 (10th Cir. 2012). As to the fourth prong, "an error that does not affect the jury's verdict . . . does not significantly impugn the fairness, integrity, or public reputation of the judicial process." *Id.* (internal quotation marks omitted). Aside from a conclusory allegation that the statements were "prejudicial," Mr. Bong has made no attempt to demonstrate that the outcome of his trial would have been different if the statements had not been admitted. *See* Aplt. Br. at 22, 34. He has further failed to show how the admission of the statements undermined the public reputation or integrity of the judicial process.

We have long refused to consider arguments not adequately briefed. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998); *see also* Fed. R. App. P. 28(a)(8) (requiring appellant to establish his contentions on appeal with citations to relevant authority); *Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1151–52 (10th Cir. 2012) (refusing to consider appellant's inadequately briefed plain error argument).

Because Mr. Bong failed to argue two of the four elements of plain error, we decline to consider his challenge further.[6]

### III.   CONCLUSION

For the reasons discussed above, we AFFIRM Mr. Bong's conviction.

ENTERED FOR THE COURT


Carolyn B. McHugh
Circuit Judge

---

[6] Mr. Bong's cumulative error challenge fails for the same reason.