**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 24, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

DAVID G. NICHOLAS, JR.,

     Defendant - Appellant.

No. 16-3043
(D.C. No. 6:14-CR-10005-JTM-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO** and **BACHARACH**, Circuit Judges.[**]
_____

David Nicholas appeals his conviction on three counts of being a felon in

possession of a firearm and ammunition. He also challenges the district court's

imposition of a sentence enhancement under the Armed Career Criminal Act

("ACCA"), 18 U.S.C. § 924(e). Exercising jurisdiction under 28 U.S.C. § 1291 and

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The Honorable Neil Gorsuch heard oral argument but did not participate in this order and judgment. The practice of this court permits the remaining two panel judges, if in agreement, to act as a quorum in resolving the appeal. See 28 U.S.C. §46(d); see also United States v. Wiles, 106 F.3d 1516, 1516 n* (10th Cir. 1997) (noting this court allows remaining panel judges to act as a quorum to resolve an appeal).

18 U.S.C. § 3742(a)(1) and (2), we affirm Nicholas' convictions but vacate his sentence and remand for resentencing.

**I**

On October 3, 2013, Nicholas was arrested for a parole violation at the Indian Hills Meat and Poultry grocery store. He and his girlfriend, Kendra Henry, had ordered groceries the day before. When they arrived in Henry's truck, accompanied by Henry's two children, to retrieve their purchase, officers approached the vehicle and apprehended both Nicholas and Henry. In the course of the arrest, the officers discovered two loaded firearms in the truck—a Harrington and Richardson Model 949 .22 caliber revolver and a Remington Model 7600 30-06 caliber rifle—as well as ammunition in a box near the passenger seat and in the front passenger-side door.

Nicholas was subsequently indicted on two counts of being a felon in possession of a firearm and one count of being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). At trial, Nicholas moved for judgment of acquittal. The district court denied the motion, and the jury found Nicholas guilty on all three counts. The presentence investigation report ("PSR") classified Nicholas as an "armed career criminal" under the ACCA, based on his three prior felony convictions for Montana assault, Kansas robbery, and Kansas aggravated robbery. See § 924(e)(1) (subjecting individuals with at least "three previous convictions . . . for a violent felony or a serious drug offense" to an enhanced sentence). This designation subjected Nicholas to an enhanced, minimum sentence of fifteen years' imprisonment. See id. After concluding that each of

2

Nicholas' three prior felonies qualified as a crime of violence under the ACCA, the district court adopted the PSR and imposed a sentence of 180 months on each count, to run concurrently. Nicholas timely appealed.

## II

Nicholas argues that the evidence presented at trial was insufficient to support his conviction for knowingly possessing firearms and ammunition.[1] We review the sufficiency of the evidence de novo. United States v. Smith, 641 F.3d 1200, 1204 (10th Cir. 2011). In doing so, we may "not weigh conflicting evidence or consider witness credibility," United States v. Hien Van Tieu, 279 F.3d 917, 921 (10th Cir. 2002), but must instead "accept at face value the jury's credibility determinations and its balancing of conflicting evidence," United States v. Cardinas Garcia, 596 F.3d 788, 794 (10th Cir. 2010). We will reverse a conviction only if, viewing the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the government, we determine that "no reasonable juror could have reached the disputed verdict." United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997).

To obtain a conviction under § 922(g)(1), the government must prove that Nicholas knowingly possessed the firearms and ammunition found in Henry's truck.

---

[1] Nicholas also argues the government failed to prove that the guns found in Henry's truck were "firearms," as defined in 18 U.S.C. § 921(a)(3) ("The term 'firearm' means . . . any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive . . . ."). However, the parties stipulated that the firearms were functional, and this stipulation was conveyed to the jurors in Jury Instruction No. 14.

See Hien Van Tieu, 279 F.3d at 922.  This may be demonstrated through evidence of actual or constructive possession.  See id.  The latter "exists when a person not in actual possession knowingly has the power and intent at a given time to exercise dominion or control over an object."  United States v. Little, 829 F.3d 1177, 1182 (10th Cir. 2016).[2]  "Dominion, control, and knowledge, in most cases, may be inferred if a defendant had exclusive possession of the premises; however joint occupancy alone cannot sustain such an inference."  United States v. Mills, 29 F.3d 545, 549 (10th Cir. 1994).  In cases involving joint occupancy, the government must "show some connection or nexus between the defendant and the firearm."  Id.

Based on our review of the record, we conclude that the evidence was sufficient for a reasonable juror to find that Nicholas constructively possessed the firearms and ammunition loaded therein.  The government presented evidence that Nicholas was driving Henry's truck with the revolver underneath the driver's seat and the rifle in plain view on the back-seat floorboard.  Officers involved in Nicholas' arrest testified that both guns would have been accessible from the driver's seat.  Henry claimed the firearms were hers; however, she could not recall how to

---

[2] At the time of Nicholas' conviction, a finding of constructive possession in this circuit did not require evidence of the defendant's intent.  See United States v. Colonna, 360 F.3d 1169, 1179 (10th Cir. 2004), overruled in part as stated in Little, 829 F.3d at 1182.  This point of law was recently overruled in light of intervening Supreme Court precedent.  See Little, 829 F.3d at 1181-82.  Although the law did not change until after Nicholas' sentencing, "the integrity of judicial review requires that we apply [a new rule from the Supreme Court] to all similar cases pending on direct review."  Id. at 1181 n.2.  Notably, the government brought Little to the parties' and the court's attention in its answer brief, but Nicholas has not asserted any error specific to this change in the law.

4

load the rifle. And she further equivocated as to whether she had been the one to pack the firearms in the truck with the family's other belongings. Moreover, although Henry testified that her practice was to always keep her rifle covered with the safety on, the officers testified that when they found the rifle in the truck, the safety was off and it was uncovered. Henry also could not remember when, or even if, she had purchased the shoulder holster that was found beside the revolver under the driver's seat, even though its packaging was discovered in the back seat of the truck. Finally, the government presented evidence of two phone calls Nicholas made from prison, during which he stated that "every day" the firearms remained in police custody, there was "an axe hang[ing] over [his] neck," and that he "shouldn't of had those guns in the truck." Nicholas argues that these statements were not admissions of guilt; however, it would have been reasonable for the jury to reject his alternative explanation and conclude that the statements supported a finding of guilt. See United States v. Horn, 946 F.2d 738, 741 (10th Cir. 1991) (noting that in a sufficiency of the evidence review, "[c]redibility choices [must be] resolved in favor of the jury's verdict"). Therefore, we must affirm Nicholas' convictions for possession of a firearm and ammunition.[3]

_____

[3] Nicholas appears to concede that knowingly possessing the ammunition in the firearms is sufficient to support his separate conviction for possession of ammunition. Thus, we need not consider whether the evidence also demonstrates that Nicholas knowingly possessed the ammunition in the box and the passenger-side door. Although Nicholas protests that the general verdict form did not specify on what ammunition the jury based its guilty verdict, we are unaware of any authority requiring such a specification.

5

## III

In addition to challenging his convictions, Nicholas contends that his sentence was unconstitutionally enhanced under the ACCA,[4] in light of the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015). We review a sentence enhancement under the ACCA de novo. United States v. Barney, 955 F.3d 635, 638 (10th Cir. 1992). The statute imposes a penalty enhancement for violations of § 922(g) if the defendant has three previous convictions for a "violent felony." § 924(e)(1). The ACCA's "elements" clause defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(i). Although "physical force" is not defined in the statute, the Supreme Court has stated that the phrase "means violent force," or "force capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 140 (2010). Mere offensive touching will not suffice. See id. at 139-42. Accordingly, Nicholas' sentence may stand only if each of his three prior felony convictions qualifies as a crime of violence under the ACCA's elements clause. In

---

[4] At various points in his opening brief, Nicholas appears to argue that his prior convictions also do not qualify as crimes of violence for purposes of the Sentencing Guidelines. However, he does not clearly develop this argument apart from his ACCA challenge. Accordingly, we decline to consider it as a separate issue. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998) (arguments inadequately briefed in the opening brief are waived). Moreover, any such argument is likely foreclosed by the Supreme Court's recent decision in Beckles v. United States, 137 S. Ct. 886 (2017), which rejected a due process vagueness challenge to § 4B1.2(a)'s residual clause. Nicholas concedes that his convictions "very well might be" violent felonies under the residual clause.

other words, each must require the use, attempted use, or threatened use of violent physical force against the person of another.  See § 924(e)(1), (2)(B)(i).

One of Nicholas' prior felony convictions was for Kansas robbery.  In analyzing this conviction, we employ a two-step inquiry:  first, "we must identify the minimum 'force' required by [Kansas] law for the crime of robbery"; second, we must "determine if that force categorically fits the definition of physical force" required under the ACCA.  United States v. Harris, 844 F.3d 1260, 1264 (10th Cir. 2017).  The parties agree that the Kansas robbery statute is indivisible.  See Mathis v. United States, 136 S. Ct. 2243, 2248 (2016).  Accordingly, we apply the categorical approach, "focusing on the elements of the crime of conviction, not the underlying facts."  Harris, 844 F.3d at 1263 (citing Descamps v. United States, 133 S. Ct. 2276, 2283 (2013)).

At the time of Nicholas' conviction, the Kansas robbery statute defined robbery as "the taking of property from the person or presence of another by force or by threat of bodily harm to any person."  Kan. Stat. § 21-3426 (1999) (repealed 2011).  Nicholas argues that a conviction under this statute requires nothing more than de minimis physical contact or the threat of physical contact, which is insufficient to satisfy the ACCA's force requirement.  We agree.

**A**

We look first to Kansas state law to define the substantive elements of Kansas robbery and, in particular, the requirements of "force" or "threat of bodily harm."  See Harris, 844 F.3d at 1264.  In State v. McKinney, 961 P.2d 1 (Kan. 1998), the

7

Kansas Supreme Court reviewed McKinney's robbery conviction for purse-snatching. Id. at 8. McKinney conceded that he snatched a purse from the victim's arm, but denied that he pushed her in the process. Id. Thus, he argued that the jury should have been instructed on the lesser-included offense of theft. Id. However, the court agreed with the government's argument that even if McKinney's version of events were true—i.e., that he snatched the victim's purse from her arm without pushing her—the mere act of snatching the purse "constituted the threat of bodily harm" required for a robbery conviction. Id. Thus, the court concluded, the evidence supported the robbery charge and "exclude[d] a theory of guilt of theft." Id.

The government's assertion in this case that Kansas robbery requires more than de minimis physical contact is contravened by McKinney's conclusion that merely snatching a purse from someone's possession is sufficient to support a robbery conviction. We are unpersuaded by the government's argument that Kansas robbery requires the use of violent force simply because the Kansas Supreme Court has at times used the term "violence" to refer to the acts underlying a robbery. The primary case relied upon by the government, State v. Aldershof, 556 P.2d 371 (Kan. 1976), uses the term "violence" in reference to robbery while answering the question of when force must occur, not what degree of force is required. Id. 373-75. Moreover, insofar as Aldershof appears to conflate "violence" with the force necessary to support a robbery conviction, those concepts are later divorced in State v. Peck, 703 P.2d 781 (Kan. 1985). See id. at 787 ("But the jury found there was no violence used in the commission of the robbery. . . . Since there was no direct

8

evidence as to violence occurring with that taking, the jury acquitted Peck on the charge of aggravated robbery, and instead found him guilty of simple robbery.").

More importantly, the McKinney court explicitly relied on Aldershof in concluding that mere purse-snatching can support a conviction for Kansas robbery. See McKinney, 961 P.2d at 9. We must therefore reject any interpretation of Aldershof that would be inconsistent with the holding in McKinney. See Jackson v. Harris, 43 F.2d 513, 516-17 (10th Cir. 1930) ("Where such decisions are in conflict, the national courts will follow the latest settled adjudications of the highest court of the state rather than the earlier ones . . . ."). In doing so, we acknowledge that many, if not most, Kansas robbery convictions will likely involve a greater degree of force than mere purse-snatching; however, our analysis must focus on the lowest level of conduct that can support a conviction under the statute. See Moncrieffe v. Holder, 133 S. Ct. 1678, 1684 (2013) ("Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction 'rested upon nothing more than the least of the acts' criminalized, and then determine whether even those acts [would constitute violent felonies]." (quoting Johnson, 559 U.S. at 137) (alterations omitted)). In the context of Kansas robbery, McKinney establishes that lowest level of culpable conduct.

**B**

Having determined the minimum force necessary under Kansas law to support a robbery conviction, we consider whether that force categorically fits the definition of physical force under the ACCA. Several circuit courts have concluded that,

9

because a state's robbery statute may be violated with minimal actual force, it does not qualify as a violent felony under the ACCA. See, e.g., United States v. Eason, 829 F.3d 633, 640-42 (8th Cir. 2016) (Arkansas robbery); United States v. Gardner, 823 F.3d 793, 803-04 (4th Cir. 2016) (North Carolina robbery); United States v. Parnell, 818 F.3d 974, 979 (9th Cir. 2016) (Massachusetts armed robbery); see also United States v. Bell, 840 F.3d 963, 964-67 (8th Cir. 2016) (holding Missouri second-degree robbery does not qualify as a crime of violence under Sentencing Guidelines). We find these cases instructive.

The Ninth Circuit noted in Parnell that "the snatching of a purse from a victim's hand . . . does not constitute force 'capable of causing physical pain or injury to another person.'" 818 F.3d at 979 (quoting Johnson, 559 U.S. at 140). And in Bell, the Eighth Circuit concluded that Missouri robbery did not qualify as a crime of violence under the Sentencing Guidelines' analogous "force" provision because a "Missouri court upheld a conviction for second-degree robbery in at least one situation where a defendant's conduct . . . [fell] short of" the force required by Johnson. Bell, 840 F.3d at 966. Specifically, the Missouri Court of Appeals had sustained a robbery conviction based on testimony that the defendant "bumped" the victim's shoulder, "yanked" her purse away, and engaged in a "slight" struggle with the victim over the purse. Id. (quoting State v. Lewis, 466 S.W.3d 629, 632-33 (Mo. Ct. App. 2015)). Citing these facts, as well as the absence of any testimony that the struggle had caused the victim pain or injury, Bell concluded there was "at least a

10

reasonable probability Missouri could apply its statute (or already has) to conduct falling short of violent force." Id. (quotation omitted).

We do not see an appreciable difference between the degree of force necessary to sustain the robbery convictions at issue in Parnell and Bell, and the level of force the defendant claims to have used in McKinney. Accordingly, we conclude that Kansas robbery does not necessarily require the use, attempted use, or threatened use of violent force against the person of another.[5]

For the same reasons that we follow the analysis of Parnell, Bell, and related cases, we find inapplicable the line of circuit decisions upholding the use of state robbery convictions for sentence enhancement purposes. See, e.g., Harris, 844 F.3d at 1266-70 (Colorado robbery); United States v. Priddy, 808 F.3d 676, 686 (6th Cir. 2015) (Tennessee robbery); United States v. Duncan, 833 F.3d 751, 754-58 (7th Cir. 2016) (Indiana robbery); Doctor, 842 F.3d at 308-12 (South Carolina robbery). In each of these cases, there was either an explicit element of violence in the statute,

---

[5] In so holding, we acknowledge that we have not identified a general statement from Kansas courts as to the degree of force required to support a Kansas robbery conviction. This is due to the fact that most cases addressing the force element of Kansas robbery have done so in the context of determining the statute's temporal requirements, not its degree-of-force requirements. See State v. Graham, 6 P.3d 928, 930 (Kan. Ct. App. 2000) ("While many Kansas appellate court cases address when the force or threat must occur to constitute robbery, few, if any, define what degree of violence constitutes 'force.'"). But in the absence of such an explicit statement, Kansas courts' actual application of the robbery statute, as in McKinney, is equally instructive. See United States v. Doctor, 842 F.3d 306, 312 (4th Cir. 2016) (indicating that either a general statement regarding the degree of force required under the state statute or examples of state cases requiring only de minimis actual force would be sufficient to conclude that state robbery does not require violent force).

11

see, e.g., Priddy, 808 F.3d at 686, or an absence of state authority demonstrating a reasonable probability that state courts would apply the statute to non-violent conduct, see, e.g., Harris, 844 F.3d at 1267-68. Neither of these circumstances is present in this case. The Kansas Supreme Court in McKinney addressed the level of force required to support a robbery charge under the Kansas statute and concluded that mere purse-snatching would suffice. See McKinney, 961 P.2d at 8.

Because Kansas robbery does not require the use, attempted use, or threatened use of violent force as defined in Johnson, it cannot serve as a predicate offense for purposes of the ACCA's sentence enhancement provisions. Accordingly, Nicholas does not have three prior felony convictions to support an ACCA enhancement, and we need not consider whether Nicholas' other two convictions are violent felonies.

**IV**

For the foregoing reasons, we **AFFIRM** Nicholas' convictions, but we **VACATE** his sentence and **REMAND** to the district court with instructions to resentence him consistent with this order and judgment.

Entered for the Court

Carlos F. Lucero
Circuit Judge

12