<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**January 28, 2019**

**FOR THE TENTH CIRCUIT**

———————————————————

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

                            No. 16-3323

TROY A. BONG,

     Defendant - Appellant.

———————————————————

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. Nos. 6:16-CV-01088-JTM and 6:13-CR-10004-JTM-1)**

———————————————————

Josh Lee, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Office of the Federal Public Defender for the District of Colorado, Denver, Colorado, appearing for Appellant.

Jared S. Maag, Assistant United States Attorney (Thomas E. Beall, United States Attorney, with him on the briefs), Office of the United States Attorney for the District of Kansas, Topeka, Kansas, appearing for Appellee.

———————————————————

Before **BRISCOE**, **KELLY**, and **BACHARACH**, Circuit Judges.

———————————————————

**BRISCOE**, Circuit Judge.

———————————————————

Defendant Troy Bong, convicted in 2013 of being a felon in possession of a firearm and sentenced to a term of imprisonment of 293 months, appeals from the district court's denial of his motion to vacate, set aside, or correct sentence pursuant

to 28 U.S.C. § 2255. The district court granted Bong a certificate of appealability (COA) on Bong's claims that he was improperly sentenced under the Armed Career Criminal Act (ACCA) and that his trial and appellate counsel were ineffective for failing to challenge the ACCA sentencing. We subsequently granted Bong a COA as to two additional issues: (1) whether his trial counsel was ineffective for failing to investigate the facts of the underlying traffic stop, Bong's resulting arrest, and Bong's alleged possession of a firearm; and (2) whether the prosecution suppressed any available video recordings of his stop and arrest.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we agree with Bong that the district court erred in treating his prior Kansas state convictions for robbery and aggravated robbery as "violent felonies" under the ACCA. Consequently, we remand to the district court for consideration of whether Bong's remaining prior convictions are sufficient to support his sentence under the ACCA. As for Bong's ineffective assistance of trial counsel claims, we affirm in part, reverse in part, and remand for further proceedings. Lastly, as to Bong's prosecutorial misconduct claim, we reverse and remand for further proceedings.

I

*a) The underlying facts of Bong's case*

In an unpublished order and judgment issued in 2014, we addressed Bong's direct appeal and summarized the underlying facts of his case:

> On December 22, 2012, Officers [Robert] Thatcher and [Joseph] Springob of the Wichita Police Department were parked outside a house that was the subject of a drug investigation. The officers observed a car

leave the target house and followed the vehicle. The driver of the vehicle failed to activate the car's turn signal 100 feet before an intersection. Based on this traffic violation, the officers initiated a traffic stop. Officer Springob approached the driver's side of the car, while Officer Thatcher approached the passenger side. A woman, later identified as Mr. Bong's wife, was driving the car. Mr. Bong was in the front passenger seat.

Officer Thatcher used his flashlight to look into the passenger side of the vehicle as he approached. Officer Thatcher testified Mr. Bong refused to make eye contact, instead staring straight ahead. Officer Thatcher thought Mr. Bong looked familiar, prompting him to ask for Mr. Bong's identification. Mr. Bong opened the passenger door to hand Officer Thatcher his identification. As Mr. Bong opened the door, Officer Thatcher noticed a cigarette pack between the passenger seat and the door. Officer Thatcher found this suspicious because in his experience people attempting to hide illegal substances often drop them between the seat and door.

After examining Mr. Bong's identification, Officer Thatcher recalled he had previously arrested Mr. Bong on drug, firearms, and parole violation charges. Officer Thatcher asked Mr. Bong if he was still on parole, but Mr. Bong refused to respond. According to Officer Thatcher, Mr. Bong began to exhibit signs of nervousness—heavy breathing, sweating, and refusal to acknowledge the officer. Because Officer Thatcher's prior arrest of Mr. Bong had involved a firearm, the officer became concerned for his and Officer Springob's safety. Officer Thatcher then asked Mr. Bong to exit the vehicle. Mr. Bong initially refused to respond, but he eventually exited the vehicle after Officer Thatcher repeated his order several times.

When Mr. Bong stepped out of the vehicle, Officer Thatcher noticed he was standing so that the right side of his body was turned away. Officer Thatcher also observed a knife clipped into one of the front pockets of Mr. Bong's jacket. Officer Thatcher removed the knife from Mr. Bong's pocket and told him to put his hands on top of the car. He then informed Mr. Bong that he was going to perform a patdown for weapons. According to Officer Thatcher, Mr. Bong hesitated, but eventually put his hands on the top of the car.

Officer Thatcher reached up to place his hands on top of Mr. Bong's hands on the car roof. As he did so, Mr. Bong attempted to back away from the car and evade Officer Thatcher. Because he feared Mr. Bong might have a weapon, Officer Thatcher attempted to maintain control of Mr. Bong's hands. The two struggled briefly, at which point Officer Thatcher tried to throw Mr. Bong to the ground while keeping control of his hands. Both men fell to the ground, still struggling. As

3

Mr. Bong attempted to rise, Officer Thatcher kicked him approximately three times in the abdomen in an attempt to knock him back down. At that point, Officer Thatcher observed a black object resembling a firearm fall to the ground. He immediately yelled "gun, gun!" Aplt. Appx. at 93.

In response to Officer Thatcher's shout, Officer Springob entered the fray and knocked Mr. Bong to the ground. The officers were able to subdue Mr. Bong and place him in handcuffs. After the officers restrained Mr. Bong, they found a firearm on the ground beneath him.

United States v. Bong, 596 F. App'x 607, 608–09 (10th Cir. 2014) (Bong I).

*b) Bong's trial proceedings and sentencing*

On January 8, 2013, a federal grand jury indicted Bong on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Bong "moved to suppress the evidence obtained during the traffic stop and his arrest, arguing it was obtained in violation of his Fourth Amendment rights." 596 F. App'x at 609. Bong "acknowledged the officers had reasonable suspicion to initiate an investigative traffic stop on the basis of the observed traffic violation," but nevertheless "argued the scope of the detention following the traffic stop and the force used by the officers was unreasonable." Id. "The district court expressed concern about the level of force used by the officers, but it ultimately concluded Officer Thatcher's actions were justified under the circumstances" and thus "denied [the] motion to suppress." Id.

"The case proceeded to trial," where the "Government advanced the theory that . . . Bong dropped the gun during the scuffle with the officers." Id. "Bong's defense was that another man, Jeremy Fisher, had dropped the gun where it was found and the traffic stop and subsequent scuffle only coincidentally occurred at the

4

same location . . . Fisher had dropped the gun." Id.  At the conclusion of the evidence, the jury convicted Bong of the felon-in-possession charge.

The presentence investigation report (PSR) applied a base offense level of 24. But the PSR concluded that Bong "ha[d] at least three prior convictions for a violent felony or serious drug offense, or both, which were committed on different occasions" and was therefore "an armed career criminal and subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e)."  ROA, Vol. 2 at 11. Consequently, the PSR applied an offense level of 33 pursuant to U.S.S.G. § 4B1.4. The PSR in turn concluded that Bong's total criminal history score was 31, which resulted in a criminal history category of VI.  Together, the total offense level of 33 and the criminal history category of VI resulted in an advisory sentencing guidelines range of 235 to 293 months.

Bong did not file objections to the PSR, but did file a sentencing memorandum asking the district court to vary downward and impose a sentence of 187 months. The district court denied that request and sentenced Bong to a term of imprisonment of 293 months.

*c) Bong's direct appeal*

Bong filed a direct appeal challenging the district court's denial of his motion to suppress.  Bong also challenged the trial court's admission at trial of two sets of statements.  On December 18, 2014, we issued an unpublished order and judgment rejecting Bong's arguments and affirming Bong's conviction.  Bong I, 596 F. App'x at 614.

Bong filed a petition for writ of certiorari with the Supreme Court. His petition was denied on April 20, 2015. Bong v. United States, 135 S. Ct. 1873 (2015).

*d) Bong's § 2255 proceedings*

On April 6, 2016, Bong filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 asserting twenty-two separate grounds for relief. Of relevance here, Ground One of the motion argued that in light of the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015) (Johnson II), Bong's prior convictions did not qualify as "violent felonies" or "crimes of violence" for enhanced sentencing purposes because they did not require the use, attempted use, or threatened use of physical force. ROA, Vol. 1 at 633. Ground Two alleged, in pertinent part, that Bong's appellate counsel was ineffective for failing to "raise, brief and argue the . . . fast developing legal issues regarding [the] Armed Career Criminal Act and enhanced sentence." Id. at 634. Ground Twenty One of Bong's motion alleged that his trial counsel was ineffective for failing to challenge the PSR or the convictions used to qualify Bong for the ACCA enhancement. Id. at 655.

Bong subsequently moved for appointment of counsel. The district court granted the motion, but solely for purposes of counsel assisting Bong "in obtaining relief under Johnson [II]." Dist. Ct. Docket No. 74 at 2. Bong's appointed counsel moved to amend the § 2255 motion. In support, Bong's counsel argued that, based on the Supreme Court's decision in Mathis v. United States, 136 S. Ct. 2243 (2016),

6

it was "clear that . . . Bong's 1988 Kansas burglary conviction should not, and cannot be used as a predicate 'violent felony' for an Armed Career Criminal Act enhancement and it was error to be included as such by the [trial] Court," and in turn "it was ineffective for his trial and appellate counsel to fail to raise this issue at the time of his original sentencing and appeal." ROA, Vol. 1 at 783. The government filed a response arguing that Mathis did not apply retroactively to cases on collateral review. Id. at 790. Bong's appointed counsel in turn filed a reply brief challenging all of Bong's prior convictions used to establish his ACCA status.

On September 22, 2016, Bong filed a *pro se* pleading entitled "TROY BONG'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U. S. C. 2255." Id. at 831. In that *pro se* pleading, Bong alleged, in pertinent part, that he submitted a request under the Kansas Open Records Act (KORA), Kan. Stat. Ann. §§ 45-215 to 45-223, and that the City of Wichita, in response to his request, stated that "2 AXON videos (patrol car recording equipment) exist" from his stop and arrest "that are 18 minutes and 48 seconds long." Id. at 884. Bong further alleged that "due to [his] incarceration he [wa]s unable to purchase or receive copies of these videos," but that the videos "w[ould] show that [he] never resisted or attempted to escape before Thatcher threw him to the ground and began using force on him." Id. Thus, Bong argued, "these videos constitute impeaching evidence which also show that the officers gave perjured testimony at trial upon which the jury relied to convict [him]." Id.

7

On October 28, 2016, the district court issued a memorandum and order denying Bong's § 2255 motion. The district court rejected Bong's Johnson II-based arguments, noting that he "has at least three convictions under Kansas law for robbery or aggravated robbery" that "qualify as violent felonies under the ACCA." Id. at 1051. More specifically, the district court noted that Bong "was convicted in a Kansas district court on May 29, 1990, of three counts of robbery, three counts of aggravated robbery, and one count of attempted robbery." Id. at 1052. These offenses, the district court noted, "occurred on March 17, 1990; March 22, 1990; March 25, 1990 (two offenses); March 29, 1990; April 3, 1990; and April 6, 1990." Id. The district court in turn noted that "[a]t the time of the offenses, Kansas law defined robbery as 'the taking of property from the person or presence of another by threat of bodily harm to his person or the person of another or by force,'" id. (quoting Kan. Stat. Ann. § 21-3426 (1970)), and "[a]ggravated robbery was 'a robbery committed by a person who is armed with a dangerous weapon or who inflicts bodily harm on any person in the course of such robbery.'" Id. (quoting Kan. Stat. Ann. § 21-3427 (1970)). The district court thus concluded that "the elements of robbery under Kansas law incorporate the 'physical force' necessary to constitute a violent offense under § 924(e)(2)(B)." Id. The district court also concluded that "[t]he element of force or threat of bodily harm in Kansas robbery materially distinguishes this offense from Johnson [II]" because "[t]he Kansas element of the intentional use of force or threat of bodily harm necessarily contemplates force capable of causing pain or injury, placing this offense squarely within the violent felonies Congress had

8

in mind in adopting the ACCA." Id. at 1053.  In addition, the district court noted that Bong cited "no Kansas Supreme Court case finding the force element of robbery to be satisfied by evidence of 'any physical contact' with the victim" and, "[t]o the contrary, Kansas cases characterize robbery as a taking accomplished by violence or intimidation." Id. at 1053-54.  Lastly, the district court noted that Bong's "seven or so robbery offenses (including aggravated robbery) were largely consolidated for charging and sentencing," but "occurred (with one exception) on different dates, and were thus 'committed on occasions different from one another.'" Id. at 1054 (quoting United States v. Tisdale, 921 F.2d 1095, 1098 (10th Cir. 1990)).

The district court rejected all of the other claims that Bong asserted, including the various ineffective assistance of counsel and appellate counsel claims.  In addition, the district court addressed Bong's *pro se* reply brief in the following manner:

> Defendant has filed a 158-page *pro se* Reply Brief (Dkt. 96) that attempts to raise a multitude of claims in addition to those set forth in the original or amended § 2255 motions.  To the extent the Reply attempts to raise new claims, those claims are barred because they have been raised outside the applicable one-year statute of limitations. *See United States v. Guerrero*, 488 F.3d 1313, 1316 (10th Cir. 2007) ("When a § 2255 movant seeks to amend his pleading to include a new claim, we will only entertain this claim if the amendment is made within the one-year limit set by AEDPA.").  To the extent the Reply raises new arguments (but not new claims) that were not set forth in his initial or amended § 2255 motions, those arguments are considered waived. *See United States v. Herget*, [585 F. App'x 948, 950] (10th Cir. 2014).  Nevertheless, the court has addressed the merits of the arguments contained in the Reply Brief to the extent feasible.

Id. at 1047 n.1.

9

Lastly, the district court granted Bong a COA with respect to the issues raised in his § 2255 motion concerning his "classification as an armed career criminal and the effectiveness of counsel with respect to that classification." Id. at 1072. The district court denied Bong a COA on the remaining issues asserted in his § 2255 motion. Id. at 1073.

Bong filed a timely notice of appeal. He has since filed a motion to expand the COA to include additional issues.

II

We begin by focusing on the ACCA-related issues on which the district court granted Bong a COA. As outlined below, we conclude that Bong's Kansas convictions for robbery and aggravated robbery do not constitute "violent felonies" for purposes of the ACCA.

*Standards of review*

"A motion to vacate a sentence under 28 U.S.C. § 2255 is generally the exclusive remedy for a federal prisoner seeking to attack the legality of detention." United States v. Harris, 844 F.3d 1260, 1263 (10th Cir. 2017) (quotation marks and brackets omitted). We review de novo the district court's rulings on a § 2255 motion and its findings of fact for clear error. Id.

"Whether a prior conviction satisfies the ACCA's violent felony definition is a legal question we review de novo." United States v. Titties, 852 F.3d 1257, 1263 (10th Cir. 2017).

*Was Bong properly sentenced under the ACCA?*

"[T]he ACCA mandates an enhanced sentence of imprisonment of not less than 15 years when the violator of § 922(g) has 'three previous convictions . . . for a violent felony.'" United States v. Garcia, 877 F.3d 944, 946 (10th Cir. 2017) (quoting 18 U.S.C. § 924(e)(1)). The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that falls within the scope of one of three enumerated clauses: (1) the elements clause, which states: "has as an element the use, attempted use, or threatened use of physical force against the person of another," § 924(e)(2)(B)(i); (2) the enumerated offenses clause, which includes any crime that "is a categorical match to the generic offenses of 'burglary, arson, or extortion,'" Harris, 844 F.3d at 1263 (quoting § 924(e)(2)(B)(ii)); or (3) the residual clause, which includes any crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

In Johnson II, the Supreme Court held that the ACCA's residual clause was unconstitutionally vague and "that imposing an increased sentence under the residual clause . . . violates the Constitution's guarantee of due process." 135 S. Ct. at 2563. The result is that, for a prior conviction to constitute a "violent felony" under the ACCA, it must either be one of the enumerated offenses in § 924(e)(2)(B)(ii) or it must fall within the elements clause in § 924(e)(2)(B)(i). See Harris, 844 F.3d at 1263. In this case, it is undisputed that Bong's prior Kansas convictions for robbery and aggravated robbery do not fall within the enumerated-offenses clause

11

and, thus, must fall within the elements clause in order to constitute "violent felonies" for purposes of the ACCA.

"To determine if a prior conviction qualifies as a violent felony" under the ACCA's elements clause, "we apply the categorical approach, focusing on the elements of the crime of conviction, not the underlying facts." Harris, 844 F.3d at 1263 (citing Descamps v. United States, 133 S. Ct. 2276, 2283 (2013)). More specifically, we must determine whether the Kansas statutes of conviction "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another." See § 924(e)(2)(B)(i). "This inquiry requires application of both federal law and [Kansas] state law." Harris, 844 F.3d at 1264. "Federal law defines the meaning of the phrase 'use, attempted use, or threatened use of physical force' in § 924(e)(2)(B)(i)." Id. "And state law defines the substantive elements of the crime of conviction." Id.

The terms employed in the ACCA's elements clause have, for the most part, been clearly defined by the Supreme Court. The term "use," as employed in the ACCA's elements clause, "requires active employment" rather "than negligent or merely accidental conduct." Leocal v. Ashcroft, 543 U.S. 1, 9 (2004). In turn, the term "physical," as employed in the ACCA's elements clause, means "force exerted by and through concrete bodies—distinguishing physical force from, for example, intellectual force or emotional force." Johnson v. United States, 559 U.S. 133, 138 (2010) (Johnson I). As for the term "force," the Court rejected the traditional definition (i.e., that force can be satisfied by even the slightest offensive touching)

12

and instead held that in the context of the ACCA, the phrase "physical force" means "violent force"—"force capable of causing physical pain or injury to another person." Id. at 140. Thus, the ACCA's elements clause refers to the active, attempted, or threatened employment of violent force—force capable of causing physical pain or injury—against the person of another.

Recently, in Stokeling v. United States, 586 U.S. –, 2019 WL 189343 (2019), the Supreme Court revisited the ACCA's elements clause to determine whether a Florida robbery conviction constituted a predicate offense under the ACCA. In doing so, the Court held "that the elements clause encompasses robbery offenses that require the criminal to overcome the victim's resistance." 2019 WL 189343 at *3. The Court explained that "the force necessary to overcome a victim's physical resistance is inherently 'violent' in the sense contemplated by Johnson[ I], and 'suggest[s] a degree of power that would not be satisfied by the merest touching.'" Id. at *7 (quoting Johnson I, 559 U.S. at 139). "This is true," the Court noted, "because robbery that must overpower a victim's will—even a feeble or weak-willed victim—necessarily involves a physical confrontation and struggle." Id. The Court stated that a physical confrontation or "altercation need not cause pain or injury or even be prolonged" because "it is the physical contest between the criminal and the victim that is itself 'capable of causing physical pain or injury.'" Id. (quoting Johnson I, 559 U.S. at 140). Lastly, and significantly for purposes of our case, the Court made it a point to emphasize that the "[m]ere 'snatching of property from another' will not suffice" to constitute robbery under Florida law. Id. at *9.

13

Having outlined the meaning of the ACCA's elements clause, "[w]e now apply these principles to [the Kansas] robbery statute to determine whether it 'has as an element the use, attempted use, or threatened use of physical force against the person of another.'" Id. (quoting § 924(e)(2)(B)(i)). In Harris, we outlined a "two-step inquiry" for resolving whether a state's "robbery statute requires physical force as that term is used in the ACCA." 844 F.3d at 1264. First, "we must identify the minimum 'force' required by [the applicable state] law for the crime of robbery." Id. Second, we must "then determine if *that* force categorically fits the [ACCA's] definition of physical force." Id. (italics in original). The Supreme Court has emphasized "that in construing the minimum culpable conduct, such conduct only includes that in which there is a 'realistic probability, not a theoretical possibility' the state statute would apply." Id. (quoting Moncrieffe v. Holder, 133 S. Ct. 1678, 1685 (2013)). "Decisions from the state supreme court best indicate a 'realistic probability,' supplemented by decisions from the intermediate-appellate courts." Id. (quoting Moncrieffe, 133 S. Ct. at 1685).

Bong's ACCA sentence was based, in pertinent part, on three Kansas state robbery convictions and three Kansas state aggravated robbery convictions, all of which occurred in April of 1990 (but were based on separate incidents). At the time of those convictions, the Kansas robbery statute provided as follows: "Robbery is the taking of property from the person or presence of another by threat of bodily harm to his person or the person of another or by force." Kan. Stat. Ann. § 21-3426 (1988). And the Kansas aggravated robbery statute provided: "Aggravated robbery is a

14

robbery committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery." Kan. Stat. Ann. § 21-3427 (1988).

In the unpublished decision in United States v. Nicholas, 686 F. App'x 570 (10th Cir. 2017), a two-judge panel of this court addressed whether the same Kansas robbery statute required "physical force" as defined in the ACCA. In doing so, the panel in Nicholas "look[ed] . . . to Kansas state law to define the substantive elements of Kansas robbery and, in particular, the requirements of 'force' or 'threat of bodily harm.'" Id. at 574. The panel took particular note of State v. McKinney, 961 P.2d 1 (Kan. 1998), in which the Kansas Supreme Court reviewed the defendant's robbery conviction for purse-snatching. The robbery victim in the case testified that she had cashed some checks at a bank and walked outside with a "thing that [she] had the money in" when, as she was opening the door to her car, McKinney appeared, "pushed [her] up against a door," "grabbed [the] thing [containing the money] . . . and took out." 961 P.2d at 4. "McKinney told police that he had snatched [the victim's] purse from her arm, but he denied pushing her," and he consequently "argue[d] that the jury should have been instructed on theft as a lesser included offense of robbery." Id. at 8. The Kansas Supreme Court rejected McKinney's argument, concluding that even if he snatched the victim's purse without pushing her, simply "snatching the purse away from [the victim] constituted the threat of bodily harm, which is an element of robbery." Id. Although the panel in Nicholas "acknowledge[d] that many, if not most, Kansas robbery convictions will

15

likely involve a greater degree of force than mere purse-snatching," it nevertheless concluded that "[i]n the context of Kansas robbery, McKinney establishes th[e] lowest level of culpable conduct."[1]  686 F. App'x at 575.

The panel in Nicholas in turn "conclude[d] that Kansas robbery does not necessarily require the use, attempted use, or threatened use of violent force against the person of another."  Id. at 576.  In doing so, the panel in Nicholas noted that "[s]everal circuit courts have concluded that, because a state's robbery statute may be violated with minimal actual force, it does not qualify as a violent felony under the ACCA."  Id. at 575 (citing cases from the Fourth, Eighth, and Ninth Circuits construing Arkansas, Massachusetts, Missouri and North Carolina robbery statutes).  In particular, the Nicholas panel noted that the Ninth Circuit in United States v. Parnell, 818 F.3d 974, 979 (9th Cir. 2016) had held, in the context of examining a Massachusetts armed robbery statute, that "the snatching of a purse from a victim's hand . . . does not constitute force 'capable of causing physical pain or injury to another person.'"  818 F.3d at 979 (quoting Johnson II, 559 U.S. at 140).

Ultimately, the panel in Nicholas concluded that "the minimum force necessary under Kansas law to support a robbery conviction" does not "categorically fit[] the definition of physical force under the ACCA."  Id. at 575.  In other words,

---

[1] In reaching this conclusion, the panel in Nicholas noted that it "ha[d] not identified a general statement from Kansas courts as to the degree of force required to support a Kansas robbery conviction."  686 F. App'x at 576 n.5.  Indeed, the panel noted that most of the Kansas cases "addressing the force element of Kansas robbery have done so in the context of determining the statute's temporal requirements, not its degree-of-force requirements."  Id.

16

the panel held that "[b]ecause Kansas robbery does not require the use, attempted use, or threatened use of violent force as defined in Johnson, it cannot serve as a predicate offense for purposes of the ACCA's sentence enhancement provisions." Id. at 576.

Not surprisingly, the parties in the case before us have divergent views regarding Nicholas. Bong argues that we should adopt the reasoning in Nicholas because, although "not precedential, it is persuasive and applies here." Aplt. Br. at 48. The government, in response, argues that Nicholas "was wrongly decided." Aplee. Br. at 16. To begin with, the government asserts that, "contrary to the panel's note in Nicholas that it could not identify a general statement from Kansas courts as to the degree of force necessary to constitute robbery," there is in fact "sufficient guidance" in Kansas case law "establishing the force necessary to support a robbery conviction." Aplee. Br. at 30. In particular, the government points to the following statement made by the Kansas Supreme Court in State v. Aldershof, 556 P.2d 371 (Kan. 1976):

> [T]o constitute the crime of robbery by forcibly taking money from the person of its owner, it is necessary that the violence to the owner must either precede or be contemporaneous with the taking of the property and robbery is not committed where the thief has gained peaceable possession of the property and uses no violence except to resist arrest or to effect his escape.

Id. at 375. The government also cites various dictionaries for the proposition that "[t]he word 'violence' connotes more than mere physical contact." Aplee. Br. at 30.

17

Thus, the government argues, "[i]t is plain under Kansas law that gaining 'peaceable' possession of property is not robbery; rather, it is theft." Id. at 31.

Notably, the very same argument was made by the government in Nicholas and the panel in that case rejected it, stating as follows:

> The primary case relied upon by the government, State v. Aldershof, 556 P.2d 371 (1976), uses the term "violence" in reference to robbery while answering the question of when force must occur, not what degree of force is required. Id. at 373-75. Moreover, insofar as Aldershof appears to conflate "violence" with the force necessary to support a robbery conviction, those concepts are later divorced in State v. Peck, 703 P.2d 781 (1985). See id. at 787 ("But the jury found there was no violence used in the commission of the robbery . . . . Since there was no direct evidence as to violence occurring with that taking, the jury acquitted Peck on the charge of aggravated robbery, and instead found him guilty of simple robbery.").
>
> More importantly, the McKinney court explicitly relied on Aldershof in concluding that mere purse-snatching can support a conviction for Kansas robbery. See McKinney, 961 P.2d at 9. We must therefore reject any interpretation of Aldershof that would be inconsistent with the holding in McKinney. See Jackson v. Harris, 43 F.2d 513, 516-17 (10th Cir. 1930) ("Where such decisions are in conflict, the national courts will follow the latest settled adjudications of the highest court of the state rather than the earlier ones . . . ."). In doing so, we acknowledge that many, if not most, Kansas robbery convictions will likely involve a greater degree of force than mere purse-snatching; however, our analysis must focus on the lowest level of conduct that can support a conviction under the statute. See Moncrieffe v. Holder, 569 U.S. 184[, 190-91] (2013) ("Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction 'rested upon nothing more than the least of the acts' criminalized, and then determine whether even those acts [would constitute violent felonies]." (quoting Johnson [II], 559 U.S. at 137) (alterations omitted)). In the context of Kansas robbery, McKinney establishes that lowest level of culpable conduct.

686 F. App'x at 575 (parallel citations omitted).

18

The government also argues that the panel in <u>Nicholas</u> "simply established a quantum of force standard greater than that set by <u>Johnson I</u>." Aplee. Br. at 32. More specifically, the government argues that "the panel in <u>Nicholas</u> arguably gave little credit to the adjective 'capable' in <u>Johnson I</u>, in turn concluding that purse snatching is simply 'incapable' of causing physical injury or pain to another person." <u>Id.</u> at 33. "That," the government asserts, "is far too broad of a conclusion to reach." <u>Id.</u> According to the government, "when considering that grabbing is sufficient to cause physical injury, it is reasonable to conclude that purse snatching—which necessarily involves grabbing—is similarly sufficient force to cause physical injury." <u>Id.</u>

The problem with the government's argument is that it treats "purse snatching" as a singular type of action when, as case law clearly demonstrates, it can be accomplished in a variety of ways and with varying degrees of physical force. Of course, it is easy to conceive of a particular act of purse-snatching that involves force capable of causing physical harm to the victim—or, indeed, that actually causes physical harm to the victim. But that was not the task faced by the panel in <u>Nicholas</u> or by us. Rather, the task is to "identify the minimum 'force' required by [Kansas] law for the crime of robbery." <u>Harris</u>, 844 F.3d at 1264. And the panel in <u>Nicholas</u> concluded, correctly in our view, that this minimum level of force was defined by the specific act of purse-snatching that occurred in <u>McKinney</u>—an act that, at least according to the defendant, involved the mere snatching of the purse (or whatever the object was that actually contained the money) without any application of force

19

directly to the victim, and also, importantly, without any resistance by or injury to the victim. See generally State v. Warwick, 654 P.2d 403, 405 (Kan. 1982) (holding that "neither robbery nor aggravated robbery require bodily contact or the actual application of force to the person of another as a necessary element for the commission of those crimes"), abrogated on other grounds by State v. Adams, 744 P.2d 833 (Kan. 1987). Thus, we agree with the panel in Nicholas that robbery in Kansas can be accomplished with minimal force that falls short of the "violent force" required under the ACCA's elements clause.

The government also suggests that Nicholas is inconsistent with our published opinion in Harris. The government notes that in Harris, the "panel rejected the Ninth Circuit's decision in" Parnell, but in contrast the court in Nicholas "relied heavily on Parnell to support its conclusion that Kansas' robbery statute runs afoul of Johnson I." Aplee. Br. at 34. Contrary to the government's suggestion, however, Nicholas and Harris are consistent in their treatment of Parnell. Both Nicholas and Harris recognized that Parnell dealt with a robbery conviction under Massachusetts law and both noted that under Massachusetts law, a defendant may be convicted of robbery without using violence or intimidation of any sort. Nicholas and Harris came to different outcomes because each case addressed a different state statute. In Nicholas, the panel concluded that robbery under Kansas law was similar to robbery

20

under Massachusetts law, whereas the panel in Harris concluded that robbery under

Colorado law differed from robbery under Massachusetts law. [2]

In sum, we conclude that the government has failed to establish that the panel

in Nicholas erred in concluding that "the minimum force necessary under Kansas law

to support a robbery conviction" does not "categorically fit[] the definition of

physical force under the ACCA." 686 F. App'x at 575. In turn, we adopt the

reasoning of Nicholas and conclude that Bong's prior Kansas convictions for robbery

cannot serve as predicate offenses for purposes of the ACCA's sentence enhancement

provisions.

The question then becomes whether we should proceed to address the other

convictions that were cited in the PSR as predicate offenses, or whether we should

instead remand the case to the district court to determine in the first instance whether

those convictions are countable predicate offenses. Because the parties have briefed

the question of whether Bong's Kansas state aggravated robbery convictions can

serve as predicate offenses under the ACCA, we will proceed to address that

question.

---

[2] As Bong notes in his Rule 28(j) letter, the First Circuit recently concluded that a New York conviction for attempted robbery in the second degree was not a "crime of violence" for purposes of the career offender guidelines because "there is a realistic probability that [the defendant's] conviction was for attempting to commit an offense for which the least of the acts that may have constituted that offense included 'purse snatching, per se.'" United States v. Steed, 879 F.3d 440, 450 (1st Cir. 2018) (quoting People v. Santiago, 405 N.Y.S.2d 572, 579 (N.Y. App. Div. 1978)).

As noted, Bong has three prior convictions for violating the Kansas aggravated robbery statute. At the time of his convictions, that statute provided: "Aggravated robbery is a robbery committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery." Kan. Stat. Ann. § 21-3427 (1970). This statutory language makes clear that an aggravated robbery is (a) a robbery (as defined in the Kansas robbery statute) committed by a person who (b) is armed with a dangerous weapon *or* who inflicts bodily harm upon any person in the course of such robbery.[3] Having concluded that robbery under Kansas law is not a "violent crime" for purposes of the ACCA, the question remains whether the second element described above is sufficient to render an aggravated robbery a "violent crime."

In answering this question, we begin and ultimately end by focusing on whether being armed with a dangerous weapon during the course of a robbery is sufficient to render the crime a "violent crime" for purposes of the ACCA. The Kansas aggravated robbery statute does not define "armed," and we have not found any Kansas cases expressly defining the term.[4] Turning to dictionary definitions,

---

[3] It appears clear that these two alternative methods of rendering a robbery an "aggravated robbery" are not elements of different offenses, but rather only different means by which a person commits a single armed robbery offense. See Mathis 136 S. Ct. at 2253; State v. Brown, 401 P.3d 611, 622 (Kan. 2017) ("aggravated robbery can be committed by one who either 'is armed with a dangerous weapon' or 'inflicts bodily harm on any person in the course of such robbery'").

[4] The Kansas pattern jury instructions stated that it was not necessary for the defendant to have exhibited the dangerous weapon to the victim, and that whether or

(Continued . . .)

22

Black's Law Dictionary defines "armed" as "[e]quipped with a weapon" or "[i]nvolving the use of a weapon." *Armed*, Black's Law Dictionary (10th ed. 2014). Similarly, the Oxford English Dictionary defines "armed" as "[e]quipped with or carrying a weapon or weapons (now typically firearms); involving the use of weaponry." *Armed*, Oxford English Dictionary (online ed. 2017). Presumably, being "equipped" with a weapon is the same as "possessing" a weapon. In other words, simple possession of a weapon, rather than actual use of a weapon, is a sufficient means of being "armed" for the purposes of the Kansas aggravated robbery statute. And that conclusion is supported by State v. Buggs, 547 P.2d 720 (Kan. 1976), where the Kansas Supreme Court held that the Kansas aggravated robbery "statute requires only that the robber be 'armed with' a dangerous weapon, not that he use it or that the victim be aware of its presence." Id. at 725.

We in turn conclude that merely being "armed" with a weapon during the course of a robbery is not sufficient to render the crime a "violent crime" for purposes of the ACCA. For example, take the simple robbery that was committed in McKinney—i.e., the purse-snatching. Had the defendant in that case been armed with a weapon, even a concealed one, at the time of the purse-snatching, that would have been sufficient to render the crime an aggravated robbery under Kansas law. But, as with the simple crime of purse snatching, nothing about the defendant's mere possession of a firearm (or another deadly weapon) would have necessarily caused

not the defendant was armed with a dangerous weapon was determined from the victim's point of view. State v. Holbrook, 932 P.2d 958, 961 (Kan. 1997).

23

the crime to involve "the use, attempted use, or threatened use of violent force against the person of another."  § 924(e)(2)(B)(i).

Notably, the Ninth Circuit addressed a similar question in Parnell and concluded that "[t]he mere fact that an individual is armed . . . does not mean he or she has used the weapon, or threatened to use it, in any way."  818 F.3d at 980.  Like the Kansas aggravated robbery statute at issue here, the Massachusetts aggravated robbery statute that was before the court in Parnell did "not require a weapon to be used or displayed, or even that the victim be aware of it."  Id.  The Ninth Circuit thus concluded that "[t]here is a material difference between the presence of a weapon, which produces a *risk* of violent force, and the actual or threatened use of such force."  Id. (emphasis in original).  "Only the latter," the Ninth Circuit held, "falls within the ACCA's force clause."[5]  Id.

To be sure, the government in this case acknowledges Parnell, but states that it "disagrees with this decision."  Aplee. Br. at 36 n.11.  Notably, however, the government makes no attempt to explain why Parnell's holding on this point was incorrect.

In United States v. Redrick, 841 F.3d 478 (D.C. Cir. 2016), the District of Columbia Circuit distinguished Parnell, but it did so on the basis that the statute of

---

[5] As Bong notes in his Rule 28(j) letter, the Ninth Circuit also reached the same conclusion in a more recent case, i.e., United States v. Jones, 877 F.3d 884 (9th Cir. 2017) (holding that a conviction under Arizona's armed robbery statute did not categorically qualify as a violent felony conviction under the ACCA's force clause).

24

conviction in the case before it—i.e., Maryland armed robbery—required "that the defendant commit the crime with the *use* of a dangerous or deadly weapon." Id. at 484 (italics in original). Quite clearly, had the Kansas aggravated robbery statute required the use of a dangerous or deadly weapon, then Bong's prior aggravated robbery convictions would constitute predicate offenses under the ACCA. But, as noted, the Kansas aggravated robbery statute does not include this requirement. We therefore conclude that the Kansas crime of aggravated robbery is not categorically a "violent crime" for purposes of the ACCA.

In light of our conclusions regarding Bong's prior Kansas convictions for robbery and aggravated robbery, we reverse the district court's denial of Bong's § 2255 motion and remand to the district court for further proceedings. On remand, the district court will need to determine in the first instance whether Bong's remaining convictions are sufficient to support application of the ACCA. Specifically, Bong has the following convictions that might constitute "crimes of violence" for purposes of the ACCA: (1) a 1988 Kansas conviction for burglarizing a residence; (2) a 1990 Kansas conviction for aggravated escape from custody (he escaped from the Sedgwick County Community Corrections Center); (3) a 1999 Kansas conviction for "Riot (Misd)"; and (4) a 1999 Kansas conviction for trafficking in contraband in a correctional facility. Bong briefly addresses the burglary and trafficking convictions in his opening appellate brief, but we conclude it is proper for the district court to consider these prior convictions in the first instance.

*Ineffective assistance of trial and appellate counsel—ACCA sentence*

25

The district court also granted Bong a COA on the question of whether his trial and appellate counsel were ineffective for failing to object to the district court's imposition of the ACCA sentence. Having concluded that the district court erred in basing Bong's ACCA sentence on his prior Kansas robbery and aggravated robbery convictions, it is unnecessary for us to address this ineffective assistance claim.

III

We now turn to the two issues as to which we granted Bong a COA: (1) whether the district court erred in rejecting his claim that his trial counsel was ineffective for failing to independently investigate the facts of the alleged crime; and (2) whether the district court erred in summarily dismissing his claim regarding the allegedly newly-discovered videos of his stop and arrest (which his counsel now characterizes as a Brady/Giglio claim).[6]

*Ineffective assistance of trial counsel – failure to investigate*

Bong alleged in his original *pro se* § 2255 motion, and in greater detail in his *pro se* reply brief, that his trial counsel was ineffective for failing to investigate the facts of the traffic stop, Bong's arrest, and Bong's alleged possession of a firearm. Bong argues that had his trial counsel "conducted even a minimally adequate investigation, trial counsel would have discovered and presented multiple witnesses

---

[6] See Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment"); Giglio v. United States, 405 U.S. 150, 154 (1972) (mandating disclosure of evidence, under Brady, that affects the credibility of a witness whose testimony "may well be determinative of guilt or innocence").

26

to corroborate that Jeremy Fisher, not . . . Bong, owned and possessed the firearm and ammunition recovered by the police." Motion to Expand COA at 2–3. Bong in turn argues that he "was entitled to a hearing to prove [this] claim." Id. at 3. Relatedly, Bong argues that "the district court erred in disregarding the factual allegations set forth in [his] second *pro se* pleading." Id. Although Bong concedes that he titled this second *pro se* pleading a "Reply," he argues this was "immaterial" because "*pro se* pleadings must be liberally construed" and thus the district court was obligated "to construe the 'Reply' as an amendment." Id.

The district court considered and rejected Bong's claim that his trial counsel failed to conduct an adequate investigation. ROA, Vol. 1 at 1067–68. In doing so, the district court stated:

> Defendant's § 2255 motion fails to identify any material matters that defense counsel failed to investigate. His massive Reply Brief identifies a multitude of issues that defendant now claims should have been further investigated. But defendant fails to address the significant evidence weighing against his claim that his statement was involuntary, fails to show that counsel's performance fell below an objective standard of reasonableness, and fails to show that the alleged failure to investigate likely made a difference in the outcome.

Id. at 1068.

> [D]efendant fails to cite any material evidence that defense counsel failed to discover or to address in the course of the proceedings. Defendant now claims a number of other things could have been investigated, but most of these items have nothing to do with the issue of whether defendant possessed the firearm that was found during the stop. Defendant has now produced an affidavit of an individual named Roger Schmidt, who says that he talked to defendant and his wife on the night of the stop. Even if such evidence had been presented, however, there is no reason to believe it could have affected the outcome of the trial. Similarly, defendant now presents a statement from an individual

27

named Richard Sipes, who claims to have seen defendant at the suspected drug house on the evening of the stop, and who says "there was not a gun around." But in addition to obvious problems with this witness's credibility, his statement shows no basis for knowing whether defendant had a gun in his waistband or in his car. Any failure to discover such testimony did not prejudice defendant. Essentially, defendant's claim that additional investigation would have produced evidence to exonerate him is unsupported speculation.

Id. at 1069–70 (citations omitted). At no point did Bong expressly request an evidentiary hearing on his failure-to-investigate claim and the district court in turn did not address the need for a hearing.

We review de novo Bong's ineffective assistance of counsel claim and, in doing so, accept any underlying factual findings made by the district court unless they are clearly erroneous. United States v. Watson, 766 F.3d 1219, 1226 (10th Cir. 2014).

We conclude, with one exception, that the district court properly rejected Bong's allegations of ineffective assistance as either meritless or time-barred. That one exception concerns Bong's allegation that his trial counsel was ineffective for failing to request copies of any available video recordings of the traffic stop and his arrest. As we have noted, Bong alleged in his *pro se* reply brief that at some point in 2016, while he was incarcerated, he contacted the City of Wichita and requested copies of evidence relevant to his case under KORA. In response, the City of Wichita allegedly acknowledged that "2 AXON videos (patrol car recording equipment) exist that are 18 minutes and 48 second long." Id. at 884. However, the City of Wichita allegedly refused to provide Bong with a copy of the videos due to

28

the fact that he was incarcerated.  Id.  Bong now argues that these videos necessarily must have been of his traffic stop and arrest and were improperly suppressed by the police department or prosecution.  Bong in turn alleges that these videos "will show that [he] never resisted or attempted to escape before Thatcher just threw him to the ground and began using force on him."  Id.

The district court did not expressly address these allegations in its order denying Bong's § 2255 motion.  Instead, the district court treated these allegations as untimely because they were raised for the first time in Bong's *pro se* reply brief and thus, in the district court's view, fell outside of the one-year time limit set by AEDPA.  ROA, Vol. 1 at 1047 n.1 ("To the extent the Reply attempts to raise new claims, those claims are barred because they have been raised outside the applicable one-year statute of limitations.").  The district court failed to consider, however, the fact that Bong's § 2255 motion was filed within one year after Bong allegedly discovered this new evidence.  Based upon the materials contained in the record on appeal, we conclude that the district court should have, at a minimum, determined "the date on which the facts supporting the claim . . . could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4) ("The limitation period shall run from the latest of . . . the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due

29

diligence."). Consequently, we reverse on this narrow issue of ineffective assistance of trial counsel and remand to the district court for further consideration.[7]

<em><u>Brady/Giglio</u> claims – suppression of video evidence</em>

Bong also challenges the district court's dismissal of his related <u>Brady/Giglio</u> claim. Generally speaking, "[w]e review de novo the existence of a <u>Brady</u> violation." <u>United States v. Wells</u>, 873 F.3d 1241, 1259 (10th Cir. 2017). "Proving a <u>Brady</u> claim requires the defendant to show by a preponderance of the evidence (1) that the government suppressed evidence, (2) that the evidence was favorable to the defendant, and (3) that the evidence was material." <u>Id.</u>

Bong alleged that "[t]hrough local law enforcement actions attributable to the Government, the Government suppressed the video recordings" of the traffic stop and his arrest and that "Officer Thatcher presented false testimony denying that any video recordings existed." Aplt. Br. at 44. The district court did not expressly address this claim in its order denying Bong's § 2255 motion, but instead concluded that it was a new claim raised for the first time in Bong's *pro se* reply brief and was "barred because [it was] raised outside the applicable one-year statute of limitations." ROA, Vol. 1 at 1047 n.1.

As with Bong's related ineffective assistance claim, the district court failed to consider the fact that Bong's § 2255 motion was filed within one year after Bong

---

[7] We note that this ineffective assistance of counsel claim is intertwined with, and will ultimately hinge on the merits of, Bong's <u>Brady/Giglio</u> claim regarding the alleged videotapes of his stop and arrest.

30

allegedly discovered the existence of the video recordings. And, notably, the government agreed at oral argument that the district court erred in summarily dismissing the claim as untimely. Consequently, we reverse the district court's dismissal of Bong's <u>Brady/Giglio</u> claim and remand the claim to the district court for further consideration.[8]

IV

With respect to Bong's claims regarding his ACCA sentence, we REVERSE the district court's denial of § 2255 relief and REMAND with directions to the district court to determine whether Bong's ACCA sentence can be supported by his non-robbery-related convictions. With respect to Bong's ineffective assistance of counsel claim, we AFFIRM in part, REVERSE in part, and REMAND to the district court for further proceedings consistent with this opinion. With respect to Bong's <u>Brady/Giglio</u> claim, we REVERSE and REMAND for further proceedings consistent with this opinion. Bong's motion for expedited relief in DENIED as moot.

---

[8] According to the government, it has evidence, in particular affidavits from City employees, directly refuting Bong's allegations regarding the purported videotapes. But the government conceded that this evidence is not in the record on appeal and thus the proper course is for the district court to consider all of the evidence in the first instance.